In the Matter of the Petition of the New York and Harlem Railroad Company, Respondent, v. Elbert S. Kip and Elizabeth Kip, Appellants.

Statutes delegating the right of eminent domain to railroad and other corporations for public use, being in derogation of common right, are not to be extended by implication, and must be strictly complied with. Yet they are not to be construed so literally, as to defeat the evident purposes of the legislature.

The powers granted will extend no farther than is expressly stated in the act, or than is necessary to accomplish its general scope and purpose. If there remains a doubt as to the extent of the power, after all reasonable intendments in its favor, the doubt will be solved adversely to the claim of power.

Passenger depots; convenient and proper places for the storing and keeping of cars and locomotives; proper, secure, and convenient places for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge, and before delivery, are among the acknowledged necessities for the running and operating a railroad, and the right to take lands for those purposes, is included in the grant of power given by the general railroad act as amended in 1869 (Laws of 1869, chapter 237, section 1), which authorizes railroad corporations, to acquire real estate "for the purposes of its incorporation, or for the purpose of running or operating" its road.

It is no objection to proceeding under that act, that there are other lands in the same vicinity equally well adapted for the purpose, which possibly might be acquired by purchase. The location of the buildings and structures of the company is within the discretion of its managers, and courts will not supervise it ordinarily.

A usufructuary right, either temporary as to its continuance, or limited as to its character, does not give to the company the property which it has a right, under the statute, to acquire. And whenever the proper running and operating its road, and the interests of the public require permanent structures, it is no objection to a proceeding to acquire the land in fee, that the company is a lessee of the premises for a term of years.

(Argued November 21st, 1871; decided November 28th, 1871.)

Appeal by Elbert S. Kip, and wife, from an order of the General Term of the Supreme Court in the first department, affirming an order made at Special Term, appointing commissioners to appraise lands required by the applicant, the New York and Harlem Railroad Company, for the purposes of operating its railroad. The proceeding was initiated under the authority conferred by the amendment of the general railroad act in 1869, upon railroad corporations, to take the property of individuals for railroad purposes.

The premises sought to be condemned by the proceedings, consisted of a plat of ground in the city of New York, between Forty-seventh and Forty-eighth streets, and Fourth and Lexington avenues. The property had been leased by the applicant of the present appellants in 1858, for the term of twenty-one years, at an annual rent of $5,000, and has been, and is now used for the purposes of the road, in connection with the transportation and delivery in New York, of hay, milk, and general freight. The present application is made upon the ground, that the great increase of the business of the road, in connection with the necessary changes made, and being made in its depots and warehouses, render it necessary to erect upon the plat of ground in question, permanent and very expensive structures, and that such structures ought not, and cannot prudently be put upon premises in which the applicant has but a short term.

The appellants objected that other property in the vicinity,

equally accessible and convenient, could be had, and that so long as the applicant had a right to the present possession and use of the premises under the lease, the statute did not authorize a proceeding to condemn the reversion, or to secure the fee of the property to meet the future requirements of the company. The Supreme Court overruled the objections, sustained the application and granted the order appointing commissioners to appraise the land, and that order is brought by appeal to this court.

*E. S. Gerry*, for appellants. The statutes authorizing this proceeding are to be strictly construed. (*R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 137; *Webb* v. *M. and L. R. Co.*, 1 Eng. Rail. Cases, 439; *In re W. and C. R. R. Co.*, 56 Barb., 456; *Sharp* v. *Johnson*, 4 Hill, 92, 99; *Sharp* v. *Spier*, 4 Hill, 76; *Sprague* v. *Birdsall*, 2 Cow., 419; *Vanwickle* v. *Cam. and Am. R. R. Co.*, 2 Green (14 N. J. L.), 162; *State* v. *Jersey City*, 1 Dutch. (25 N. J. L.), 309; *Adams* v. *Saratoga R. R. Co.*, 10 N. Y. (6 Seld.), 328; *Vanhorne* v. *Dorrance*, 2 Dallas, 304; *Bradley* v. *N. Y. and N. H. R. R. Co.*, 21 Conn., 291; *Morehead* v. *S. M. R. R. Co.*, 71 Ohio, 340, 341; Palairet's Appeal, 3 Phil. Legal Gazette, 169.) The land is not needed "for the purposes of its incorporation," and cannot be taken for warehouse purposes. (*Morehead* v. *L. M. R. R. Co.*, 17 Ohio, 341; *Webb* v. *M. R. Co.*, 4 M. & C., 116; *Garside* v. *Proprietors of Trent and Mersey Navigation*, 4 T. R., 581; *Thomas* v. *Boston, etc., R. R. Co.*, 10 Metc., 472; *Norway Plains Co.* v. *Boston, etc., R. R. Co.*, 1 Gray, 263; *Illinois Central R. R. Co.* v. *Alexander*, 20 Ill., 23; *Richards* v. *Mich. Southern, etc., R. R. Co.*, 20 Ill., 404; *Porter* v. *Chicago, etc., R. R. Co.*, 20 Ill., 407; *Davis* v. *Mich. Southern, etc., R. R. Co.*, 20 Ill., 412; *People* v. *N. Y. and Harlem R. R. Co.*, 45 Barb., 78, 80; *Dry Dock R. R. Co.* v. *N. Y. and Harlem R. R. Co.*, 30 How. Pr. R., 47–49, in point.) It cannot be taken to save the company part expense. (*Lloyd* v. *Chat., Lond. and Dover Railroad*, 11 Jurist., N. S.. 385; *Great N. R. R. Co.*,

v. *Manchester S. and L. R.*, 10 Eng. L. & E. R., 11; Redfield on Railroads, § 213; *Flower* v. *L. B. and S. R. Co.*, 2 De Ger. & S., 330, 334, 336.) It can only be taken for the necessities, not the convenience of the company. (Plairet's Appeal; *The C. R. Co.* v. *Greeley*, 17 N. H., 57; *Lindsay* v. *Connors*, 2 Bay. & C., 6; *State* v. *Com'rs of Ill.*, 23 N. J., 510; *Mayor of A.* v. *O. and P. R. R. Co.*, Penn., 360; *S. W. R. Co.* v. *Board of H.*, 4 E. & B., 189.) The present application not justified by any public necessity, and the right of eminent domain extends no further. (*Bennett* v. *Boyle*, 40 Barb., 557; *Varick* v. *Smith*, 5 Paige, 137, 159; S. C., 9 id., 557, 559; *Beekman* v. *Saratoga, etc., R. R. Co.*, 3 id., 45, 73; *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 Wend., 9; *People* v. *Sup. of Westchester*, 4 Barb., 64, 75; *Matter of Albany St.*, 11 Wend., 149; *Matter of J. and C. Streets*, 19 Wend., 659; *Embery* v. *Conner*, 3 Com., 511; *Nesbet* v. *Swanby*, 39 Ill., 110; *Clark* v. *White*, 2 Swan, 540; *Hoge* v. *Swan*, 5 Md., 237; *Ten Eyck* v. *Delaware and R. R. R. Co.*, 3 Ham. (18 N. J. S.), 200; *Jinsman* v. *B. and D. R. R. Co.*, 2 Dutch (24 N. J. S.), 48; *Costar* v. *I. W. Co.*, 18 N. J. Eq. (3 E. C. Green), 54, 518; *Parham* v. *Justices D. Co.*, 9 Ga., 341, 353; *Powers* v. *Bergen*, 6 N. Y., 358, 367; *People* v. *White*, 11 Barb., 24, 32; *White* v. *White*, 5 Barb., 474, 485; *Embury* v. *Connor*, 3 Comst., 571; *Taylor* v. *Porter*, 4 Hill, 140; *Sadler* v. *Langham*, 34 Ala., 311, 332; *Warne* v. *Smith*, 5 Paige, 159; *Wilkinson* v. *Leland*, 2 Peters, 627, 657; *State* v. *Brown*, 27 N. J. S. (3 Dutch), 13, 28; *W. B. and B. Co.*, 6 How. U. S., 507; Lancis' Appeal, 55 Penn., 16; *M. S. Co.* v. *Mayor, etc.*, 4 Caldwell, 419; *Eldridge* v. *Smith*, 34 Vt., 484, 496; *State* v. *M. and E. R. R. Co.*, 25 N. J. S., 437; *Baldwin* v. *M. of N. Y.*, 2 Keyes, 394; *Adder* v. *Ball*, 3 Dall., 147.) As the company has a lease, the proceeding is premature and unnecessary, and is an effort to impair the obligation of a contract. (*W. R. R. Co.* v. *Dix*, 6 How. U. S., 516; *Young* v. *Harrison*, 6 Ga., 130; *Ford* v. *Tiley*, 6 Barn. & Cres., 325; *Bowdell* v. *Parsons*, 10 East, 359; *Elderton* v. *Emmons*,

4 House of L. Cas., 624; *Atterson* v. *Stevens*, 1 Jurist, 196.)
A legislative enactment cannot vitiate a contract, and the
company cannot do so by invoking the rights of eminent
domain. (*Brooklyn Park Com'rs* v. *Armstrong*, 44 N. Y.;
*Lloyd* v. *S. C., and D. R.*, 11 Jurist U. S., 385; *Henderson*
v. *R. R. Co.*, 17 Texas, 577–9; *McCarty* v. *Sadler*, 12 Cal.,
531; 2 Kent Com., 340; 2 Story on the Constitution, § 1385;
*Dartmouth College* v. *Woodward*, 4 Wheat. R., 625; *Fletcher*
v. *Peck*, 6 Cranch, 137; *Charles River Bridge* v. *Warren,
Bridge et al.*, Peters' S. C. R., 578.) The Constitution
authorizes the taking of land for public use, not the taking of
the title of land already subjected to public use. (*Edgerton*
v. *Huff*, 26 Ind., 35; *Giesy* v. *C. and C. R. R.*, 4 Ohio, 308.)

*M. Beach*, for respondent. The corporation is the only
judge of what property is most appropriate to its wants.
(*Oswego Bridge Co.* v. *Fish*, 1 Barb. Ch., 547; *Lund* v. *Mid-
land R. R. Co.*, 34 L. J., Ch. 276; 1 Redfield on Railways,
236; *Stockton and Darlington R. R. Co.* v. *Brown*, 9 H. of
Lord's Cases, 246.) All required to be shown as a reasonable,
not an absolute, necessity. (*Boston Waterpower Co.* v. *B.
and W. R. R. Co.*, 23 Pick., 360; *B. and N. Y. R. R.* v.
*Brainerd*, 9th N. Y. R., 100.) The lease does not affect the
proceedings. The power of the State to resume title is
implied in every conveyance. The lease is subject to the
same conditions. (*Doo* v. *The London and Croydon R. R.
Co.*, 1st Railway Cases, 257; *Stone* v. *Commercial Railway
Co.*, 4th Mylne & Craig, 121; *Mason* v. *Stokes Bay and Pier
Railway Co.*, 32 Law J. Chan., 110.)

ALLEN, J. That the land and premises, the title to which,
the applicant seeks to acquire by these proceedings, are
required for the purposes of the corporation is beyond dis-
pute, as is also the fact that the corporation has been unable
to agree for the purchase, by reason of the unwillingness or
inability of the owners, the present appellants, to treat for
the sale of the same for railroad purposes.

The best, and highest evidence of the necessities of the applicant is, that since 1858, the company has been in the actual use and occupation of the land at a large annual rent, and at a large expenditure for structures thereon, for purposes connected with the running and operating its railroad. While courts will not allow railroad corporations to avail themselves of the statutory grant of power, to take lands *in invitum*, by taking that which they do not require for a *bona fide* purpose, sanctioned by the act of the legislature, when really required in good faith for the purposes of the act, they will not interfere to prevent the taking. (*Webb* v. *The Manchester and Leeds R. Co.*, 4 Mylne and Craig, 116.) It is now quite too late to object, that the objects and purposes of railroad corporations are not public, or that the duties devolved upon them, and the services rendered by them are not of a public character, and in furtherance of public interests.

The public have an interest in the use of a railroad, and in the proper performance of every power within the franchise conferred upon a railroad corporation, and hence every facility needed by such corporation is for public purposes, and whatever is required to enable the corporation to perform its duty to the public, is within the principle which permits a delegation of power to it. The right of eminent domain, which is but a right of the people or government to resume the possession of lands for public use, and subject to which right property is always held, may be delegated to individuals, corporations or municipalities for like use, and that the construction and operating of a railroad is such a use as justifies a delegation of this right is now beyond question, and is not open for consideration. (*In re R. & S. R. Co.* v. *Davis*, 43 N. Y., 137; *Beekman* v. *Saratoga and Schenectady R. Co.*, 3 Paige, 45.) It is undoubtedly true, as claimed in behalf of the appellants, that the grant of power being in derogation of common right is not to be extended by implication, and that the act conferring the power must be strictly complied with. These principles are elementary. But statutes granting these powers are not to be construed so literally,

or so strictly as to defeat the evident purpose of the legislature. They are to receive a reasonably strict and guarded construction, and the powers granted will extend no further than expressly stated, or than is necessary to accomplish the general scope and purpose of the grant. If there remains a doubt as to the extent of the power, after all reasonable intendments in its favor, the doubt should be solved adversely to the claim of power. The purposes for which lands may rightfully be condemned to the uses of a railroad company are not necessarily confined to those needful for the track, but the legislature may confer the right to take lands compulsorily, for all needful purposes of the road and works proper and necessary to enable it to perform the public service authorized by its charter. The extent of the power depends upon the terms of the grant. The act under which the power is sought to be exercised by the present applicant, authorizes the taking of any such estate which it shall require, "for the purposes of its incorporation, or for the purpose of running or operating its road." (Laws of 1869, chap. 237, § 1.) The language of the act is very general and comprehensive. If lands are required for any of the purposes of the incorporation, or for the purpose of operating and running the road, that is, in the proper enjoyment and exercise of the franchise conferred, and in the performance of the service to the public assumed by it, they may be taken *in invitum*. The only limit to the power is the reasonable necessity of the corporation in the discharge of its duty to the public. The right to take lands upon which to erect a manufactory of cars, or dwellings for operatives, is not included in the grant. Such purposes are not legitimately and necessarily connected with the management, the running and operating of the railroad. (*Eldridge* v. *Smith*, 34 Vt., 484; *Brainerd* v. *Peck*, id., 496.) Neither can lands be taken for a mere subsidiary or extraordinary purpose. But passenger depots, convenient and proper places for the storing and keeping cars and locomotives when not in use, proper, secure and convenient places having reference to the public interests to be subserved, for the receipt

and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge, and before its removal by the owner or consignee, are among the acknowledged necessities for the running and operating the railroad, to the proper prosecution of the business in the interests of the public. They may be regarded as indispensable to the accomplishment of the general purposes of the corporation and the design of the legislative grant.

The purpose and object for which these lands are required are clearly within the scope of the grant. In *The Rensselaer and Saratoga Railroad Company* v. *Davis* (*supra*), the application was not for the *bona fide* purposes of the corporation, but for speculative purposes, and in fraud of the act conferring the power. The lands were not wanted for any legitimate purpose authorized by the act; and the court, in the just exercise of the power vested in it, to supervise and control the discretion of corporations in the exercise of statutory powers, and following well established precedents, by its decision prevented the appropriation of individual property to private use. (*Flower* v. *London, Brighton and South Coast. R. Co.*, 2 Drew & Sm., 330.) It is claimed that there are other lands in the same vicinity, equally well adapted to the use of the applicant, as those sought to be acquired by these proceedings, and which, possibly, might be acquired by purchase from the owners. But such objections to these proceedings are untenable. The location of the buildings of the company, is within the discretion of the managers, and courts cannot supervise it. The legislature has committed to the discretion of the corporation the selection of lands for its uses, and if the necessity of lands for such purposes is shown and the lands sought are suitable, the courts cannot control the exercise of the discretion, or direct which of several plats of ground shall be taken. If the taking of one plat of ground in preference to another could be shown to work great mischief, and result in great loss, which could be prevented by taking another, and the proceeding to take one

parcel compulsorily, in preference to another equally well adapted to the uses of the company, is from some unworthy or malicious motive, and not in the interests of the public, the court might entertain the question, and in the exercise of a sound discretion withhold its consent to the appropriation. But in this case there are good reasons, resulting from the present occupation of, and the expensive improvements put upon these premises by the appellant, why they should be taken if suitable and proper for the purposes required, the owners not claiming that they will sustain any especial injury peculiar to themselves, which would not be sustained by the owners of adjacent lands, if taken.

The only other question that need be considered, is the objection that there is no present necessity for these proceedings, for the reason that the applicant is now the lessee of the premises for a term having several years yet unexpired, with the right to occupy them for any of the purposes of the incorporation. The evidence shows that since the taking of the lease by the applicant, the business of the road has greatly changed in character, as well as increased in amount and volume; that the growth and increasing commerce of the city has made necessary great and material changes in the location of the depots, freight and car-houses, and other works and structures of the company; that the protection of the city against fires, as well as the proper security and protection of property intrusted to the corporation, while legitimately in its custody in the prosecution of its authorized business, as well as to enable it to furnish to the public the reasonable and proper facilities, which are demanded by the necessities of the appropriate business of the corporation, require that the present temporary and combustible structures on the lands should be removed, and larger and more permanent structures take their place, less liable to destruction by fire, and which would furnish a better and more desirable, as well as more safe and secure, deposit for goods, while necessarily in its custody, and that such improvements would cost at least $125,000. The making of these improvements

are directly in and for the public interests, and not merely a matter of convenience or profit to the corporation. The public cannot reasonably require these expensive and permanent buildings, to be put upon lands of which the railroad company is not the owner, and of which it has the use for a period less than ten years, without the privilege of a renewal of the lease, or a right to purchase the premises at the expiration of the term. The value of the materials upon a removal of the buildings would be but trifling compared with the cost and value of the buildings themselves. The necessity is a permanent necessity, and the uses are permanent and not temporary. The right to use the property under the lease is temporary, and does not supply the permanent necessities of the company. A usufructuary right either temporary as to its continuance, or limited in its character, does not give to the applicant, the property, the land which it has a right under the statute to acquire for its purposes. Whenever the interest acquired under its lease, is not such an interest as the proper running and operating its road requires, there can be no good reason why proceedings may not be taken to acquire the land in place of the term under the lease. The necessity is a present necessity, having respect to the present wants of the public, and the application is based upon the present business of the corporation, and the wants of the public, and not upon any future and contingent or conjectural needs, either of the corporation or the public. The taking of the lease does not create an estoppel against this application. The application is not to condemn the rent, or the right to the rent for the term. It is to acquire the land, subject to the lease, the remedy which has become necessary for the purposes of the corporation.

The order must be affirmed with costs.

All concur save Rapallo, J., having been of counsel not sitting.

Order affirmed.